170 So. 96

## DOOLEY v. STATE.

### 8 Div. 294.

Court of Appeals of Alabama.

June 30, 1936.

Rehearing Denied Oct. 6, 1936.

A. A. Williams, of Florence, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This appellant was tried and convicted for the offense of an attempt to commit burglary. The prosecution in the lower court was commenced by an affidavit of one Tige Latham, the alleged injured party, and the warrant issued thereon.

The testimony adduced upon the trial of this case in the court below was without dispute or conflict. The defendant offered no testimony.

The evidence discloses that on the night of the 4th of June, 1934, the following occurred as shown by the testimony of Tige Latham, the alleged injured party, wherein he stated: "My name is Tige Latham, I live about seven miles west of here in Lawrence County near Landersville. I have seen and know the defendants Troy Dooley and Wilmer Dooley. I first saw Troy Dooley the fourth night of June, 1934. He came to the car near my place. The car was 150 yards from my house. About nine-thirty in the night I heard a car pass and it was traveling east. I heard the car stop and I got up and went to the east window and the car was standing but the lights had not been turned off and in just a very short time the lights were cut off and I stood at the window some five or ten minutes and saw no lights and heard nothing. I went on the porch fronting the highway and I listened and didn't hear nothing like they had trouble. I stood there something like twenty minutes, heard nobody around the car and the lights didn't turn on no more and I went back in the house and told my wife there was a car parked down there and I didn't know whether anybody was up to something and I'd get my pistol and shoot. And I went to the west end to the barn near the hen house and raised my pistol up and shot and when I shot two persons ran. They were in eight or ten steps of me a little bit southwest of where I was. My corn was there, about 125 bushels. They were on the south side of the hen house between it and the barn and started running from there. They struck a wire fence in about sixty or seventy yards and I shot again and from there—it was a small lot—another fence in about

262

fifty or seventy five yards and I heard them strike that. Then I ran back through the yard and called my boy to go with me, someone was running away from the hen house and they are going to the car, and we went to the car. The car was down east of my house. * * * This car was about 150 yards towards Landersville from my house. I, and my son, Paul, went there. It was a Dodge Coupe. We walked up to the car and no one was there. We peeped into the car. There was a big pile of sacks on the seat and I studied what to do. I told Paul to go to Mr. Arthur Roberts and get him to come and tell some of his boys to call the sheriff that we had a car there. Paul went to Mr. Arthur Roberts and Mr. Roberts and Mr. Oscar White came right back on to where I was and my boy came back and Russell Roberts called the sheriff, Mr. Ayers, Mr. Arthur Roberts, Paul Latham and Russell Roberts came on and we sat in the car. The Sheriff got there in something like an hour. While we were waiting for the sheriff, a man walked up, coming from towards Landersville and said, 'You got something captured?' and Mr. Arthur Roberts said, 'Is this your car,' and he said 'yes sir.' This was Troy Dooley. He said what you doing at this man's house. He said he was after corn. * * * My barn is about thirty or thirty five steps from the house and the chicken house a little between the barn and house. The chicken house and barn are used in connection with my house and is surrounded by a fence and are in this county. * * * These boys (meaning Troy and Wilmer Dooley) were about fifteen steps from my corn crib I guess when I heard them."

The record shows the following occurred: "Mr. Williams (defendant's attorney), 'If the Court please, I move to exclude that answer.' No objection was made to the question and the court overruled the motion and defendant excepted."

There was other evidence tending to corroborate that given by Latham and also as to the voluntary confession of this appellant and his brother, the codefendant who was tried separately and convicted and whose separate appeal is now pending in this court.

There is but one question for decision on this appeal, and that is, Does the evidence in this case establish the corpus delicti? The contention is made that the alleged confessions of the defendants, although voluntarily made, were inadmissible for the reason the corpus delicti had not been proven.

There are numerous decisions which define an attempt to commit crime. It may, however, be readily understood that it would be difficult to lay down a general rule which could be applied as a test in all cases.

In this state it has been held that an attempt implies an intent and an actual effort to carry out or consummate the intent or purpose. In other words, an attempt implies more than an intention formed. It means to make an effort, to try, to endeavor to do the unlawful act. Mere acts of preparation, not proximately leading to the consummation of the intended crime, will not suffice to establish an attempt to commit it. There must be an overt act on the part of the accused with intent to commit the crime, which would proximately contribute to its consummation, but for an intervening cause without which the crime would have been committed.

We are of the opinion that the undisputed facts in this case brings the accused within the terms of the foregoing rule. The record shows that this appellant, who lived in an adjoining county, accompanied by his brother, whose home was in the state of Arkansas, traveled in an automobile to the home of the alleged injured party and entered upon the premises of Latham in the nighttime, and that in said car there were a quantity of empty sacks suitable for holding corn, that they turned out the lights of their car and made their way to or near the barn of Latham, which contained 125 bushels of corn, and that they fled when Latham went out near his barn and fired his pistol. He (Latham) testified at that time they were within 8 or 10 steps from him, and near his barn. Undisputably, this appellant in entering upon the premises of Latham in the nighttime, under the conditions described, was guilty of committing a trespass upon his property, an overt act, which, no doubt, had he not been prevented, would have resulted in the burglary of the barn with the intent to steal corn therefrom, as admitted by them; such declaration being wholly voluntary upon the part of the accused. For these reasons, and under the authority of the following decisions, we are clear to the conclusion that the court committed no error in the rulings here complained of. McDowell v. State, 19 Ala.App. 532, 98 So. 701; Tharpe v. State, 23 Ala.App. 193, 122 So. 698;

People v. Sullivan, 173 N.Y. 122, 65 N.E. 989, 63 L.R.A. 353, 93 Am.St.Rep. 582; Com. v. Smith, 6 Phila. (Pa.) 305; People v. Gilbert, 86 Cal.App. 8, 260 P. 558.

The record is regular, and, as no error appears in any ruling of the court, the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.